## BERRYMAN *v.* AINSWORTH BOILER & PIPE COVERING Co.

*(Circuit Court, D. Delaware. January 13, 1890.)*

1. PATENTS FOR INVENTIONS—INVENTION—CASING FOR STEAM-PIPE.
    The first claim of letters patent No. 276,044, issued to Peter Holt for caps for steam-pipe, April 17, 1883, viz., "the combination of a pipe and pipe-clothing with a cap made in two parts, for embracing both the clothing and pipe," is void, as covering any cap for covering the end of a pipe casing, it being admitted that the longitudinal division of sectional casings for pipes was old.

2. SAME—ANTICIPATION.
    The device, consisting of a cap made in two parts, each part consisting of a semi-annular piece adapted to fit over the pipe-clothing, a smaller semi-annular piece adapted to fit over the pipe, and a beveled (semi-annular) connecting piece, is anticipated—no novelty being claimed for the longitudinal division—by patent to Harris 71,300, November 26, 1867, which shows a protective jacket, with one cylindrical portion embracing the pipe, and another the non-conducting material, and a conical connecting portion, and by model of patent to Riker 159,452, February 2, 1875, showing a metallic cap for embracing pipe-coverings.

In Equity. On final hearing. Bill by Samuel H. Berryman to restrain the infringement of patent No. 276,044.

*Jerome Carty*, for complainant.
*Henry C. Conrad* and *Arthur S. Browne*, for defendant.

WALES, J.   This suit is brought for the infringement of letters patent No. 276,044, dated April 17, 1883, issued to Peter Holt for "a new and useful improvement in caps for steam-pipe clothing," and by him assigned to the complainant.   The first claim of the patent, and which is the only one involved in this controversy, reads as follows: "The combination of a pipe and pipe-clothing with a cap, D, made in two parts, for embracing both clothing and pipe, substantially as set forth."   Infringement is alleged in reference to this claim and to no other.   The complainant contends that this claim covers broadly the idea and device of a new combination in the state of the art for preventing the disintegration of the ends of the non-conducting clothing with which steam or hot-air pipes are often covered.   The defense is anticipation and non-infringement.

Various methods and contrivances had been in use, long before the date of Holt's patent, for covering steam and other pipes, in order to prevent the radiation of heat from steam-pipes, and to prevent freezing in water-pipes.   The ordinary method was to surround the pipe with a covering composed of non-conducting material, such as hair, felt, or asbestos, secured to the pipe by means of an exterior canvas or metallic covering.   In adjusting this covering at the joints of a pipe, or where it was desirable to have access thereto, or at any points in the pipe where branches were let off, it became necessary that a portion of the covering should be removed so that the pipe could be laid bare.   Such exposed ends or portions of the covering had to be protected to prevent the ends from disintegrating and falling out.   The usual means employed were to tie down the exterior canvas over the end of the covering, and bind it down to the pipe by twine or wire.   Numerous devices and expedients have been invented for the purpose of effectually covering such pipes, and many patents were produced in evidence by the defendant to show what was old in this line at the date of the application for the Holt patent.   The specification in the Holt patent describes his device and its object as follows:

"My invention, however, is not restricted to any kind of clothing, for all modern pipe-wrappings are apt to become disintegrated at the points where they are necessarily cut away for exposing the pipe wherever it is necessary to make attachments thereto.   In order to prevent this, I use an annular cap, D, made in two exactly similar parts, as best observed in the prospective view, Fig. 3, each part consisting of a semi-annular piece, *d*, adapted to fit on the outside of the non-conducting clothing, a smaller semi-annular piece, *e*, to fit to the pipe, and the beveled connecting piece, *f*; the whole being preferably composed of sheet or cast metal, and provided with lugs receiving bolts by which the two parts are secured together, so as to inclose the clothing of the pipe at and near the end of the same.   The intermediate beveled piece of one or both parts of the cap is of such a length that the beveled piece of one will overlap that of the other, thereby preventing all exposure of the end of the clothing, which, being thus contained within the cap, is not liable to be disintegrated."

The defendant's device, and for which letters patent No. 340,073, dated April 20, 1886, were secured, consists of a casing for pipes, and is composed of two cylindrical sections of sheet-metal, each section being made of two half cylinders, which are placed around the pipe to be inclosed, with their edges meeting. Adjacent sections overlap each other, as in the case of ordinary stove-pipe sections. The longitudinal edges of the halves of each section are bent outwardly, and locked together by strips of sheet-metal which have their edges bent inward. When the casing has thus been put around the pipe, the space between them is filled with a suitable non-conducting packing, such as asbestos or mineral wool. In order to permit access to the joints of a pipe without removing the casing, they are left exposed, and the casing is reduced at these points by a reduced section which is conical in shape, being, at its smaller end, of the diameter of the pipe, and expanding at its larger end to the dimensions of the rest of the casing. This reduced section is composed of two parts, which are locked together in the same manner as those of the cylindrical sections. No novelty is claimed for the manner of constructing or adjusting these outer casings, except at those points where it may be necessary to separate the joints of a pipe, or to lower it without removing the casing or disturbing the ends of the clothing. It is admitted, also, that the longitudinal division of the sectional casings and of the caps is not of modern invention.

The only question, then, is, does the Holt cap come within the definition of a "new and useful improvement," in view of the prior state of the art? The first claim, as broadly made and insisted on by the complainant, includes everything in the nature of a cap for covering the end of a pipe casing. In other words, the Holt patent is made to include a cap which would fit over the end of a casing like the circular cover or top of a pill-box, with a hole in the center for the pipe to pass through. Substitute metal for paper, and the cap and the cover are essentially the same. Such a construction of the claim goes very far, and practically defeats itself, as not being within the meaning of a "new and useful improvement." But, apart from this, it is very clear, from an examination of the defendant's exhibits, that the device of Holt, or its equivalent, had been in use before he made his application. The Harris patent, No. 71,300, dated November 26, 1867, for "fire-proof packing for smoke and hot-air flues," (defendant's Exhibit No. 10,) shows a protecting jacket which has one cylindrical portion embracing the pipe, and another cylindrical portion embracing the non-conducting material, and a conical uniting portion, thus constituting a cap protecting the end of the covering. The only distinction between this jacket, in the Harris patent, and the Holt cap, is that the latter is composed of two parts having longitudinal joints, and the former is made in one piece. As already stated, no novelty is claimed for making the cap in two pieces. The Riker patent No. 159,452, dated February 2, 1875, for "improvement in non-conducting coverings," (defendant's Exhibit No. 14,) is accompanied by a model which shows a metallic cap for protecting pipe-coverings which embraces the pipe and the pipe-covering in the same sense that the de-

fendant's cap embraces both. There is therefore no originality in the Holt cap, and the complainant's bill must be dismissed. Decreed accordingly.